PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1904
_____

UNITED STATES OF AMERICA

v.

DANIEL RUTHERFORD
a/k/a SQUEAKY,

Appellant
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 2-05-cr-00126-001)
District Judge:  Honorable John M. Younge
_____

Argued
June 27, 2024

Before:  JORDAN, SMITH, *Circuit Judges*

and BUMB, *Chief District Judge*[*].

(Filed: November 1, 2024)

_____

Justin Berg   [ARGUED]
Geoffrey Block
Alex Treiger
Kellogg Hansen Todd Figel & Frederick
1615 M Street NW – Suite 400
Washington, DC  20036
        *Counsel for Appellant*

Salvatore L. Astolfi
Robert A. Zauzmer   [ARGUED]
Office of United States Attorney
615 Chestnut Street – Suite 1250
Philadelphia, PA  19106
        *Counsel for Appellee*

David A. O'Neil
Debevoise & Plimpton
801 Pennsylvania Avenue NW – Suite 500
Washington, DC  20004
        *Counsel for Amicus Appellants National*
        *Association of Criminal Defense Lawyers,*
        *FAMM, and Federal Public & Community*
        *Defender Organization of the Third Circuit*

_____

[*] Honorable Renée Marie Bumb, Chief Judge of the United States District Court for the District of New Jersey, sitting by designation.

2

Amy M. Saharia
Danielle Sochaczevski
Jonathan E. Spratley
Williams & Connolly
680 Maine Avenue SW
Washington, DC  20024
	*Counsel for Amicus Appellants Cory Booker,
	and Dick Durbin*

————————————

OPINION OF THE COURT

————————————

JORDAN, *Circuit Judge*.

Daniel Rutherford seeks a reduction of the nearly 42.5-year sentence he received for committing two armed robberies. He argues that he is eligible for compassionate release because, if he were sentenced for those crimes today, his sentence would be at least eighteen years less than the one he received. That sentencing disparity results from changes effected by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which, among other things, made a nonretroactive change to the penalties for violating 18 U.S.C. § 924(c), the federal statute that forbids using or carrying a firearm in furtherance of drug trafficking or a crime of violence. The District Court denied Rutherford's sentence-reduction motion, holding that our precedent in *United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021), prohibits the change to § 924(c) from being a consideration when determining eligibility for compassionate release.

After the Court denied Rutherford's motion, the United States Sentencing Commission amended its policy statement on compassionate release. It said, for the first time, that courts could consider nonretroactive changes in law, like the amendment to § 924(c), when making a decision about a prisoner's eligibility for compassionate release. Rutherford now argues that we must be guided by the Commission's policy statement, notwithstanding our *Andrews* precedent and the nonretroactive character of the statutory change. In *Andrews*, however, we held that allowing prisoners to be eligible for compassionate release because of the First Step Act's change to § 924(c) would conflict with Congressional intent on nonretroactivity. That conclusion remains true. Accordingly, we will affirm the District Court's order denying Rutherford's compassionate-release motion.

## I.    BACKGROUND

### A.    Legal Background

#### 1.    The Sentencing Reform Act of 1984 and the Creation of the Sentencing Commission

Prior to 1984, courts and parole officers shared responsibility for federal criminal sentencing. *Mistretta v. United States*, 488 U.S. 361, 363-66 (1989). Courts had "wide discretion" to impose sentences, but parole officers had "almost absolute discretion" in deciding whether "to release a prisoner before the expiration of the sentence imposed by the judge." *Id.* at 363-65. In that "indeterminate-sentence system," *id.* at 365, there were "significant sentencing disparities among similarly situated offenders" in the actual

4

length of time prisoners served before being released, *Peugh v. United States*, 569 U.S. 530, 535 (2013).

Public concern about such disparities prompted Congress to overhaul the federal sentencing system, which it did in the Sentencing Reform Act of 1984 (the "Act"). Pub. L. No. 98-473, § 211, 98 Stat. 1837, 1987 (codified as amended at 18 U.S.C. § 3551 *et seq.* and 28 U.S.C. §§ 991-998). The Act created the United States Sentencing Commission,[1] the fundamental purpose of which is, as statutorily defined, to "establish sentencing policies and practices for the Federal criminal justice system[.]" 28 U.S.C. § 991(b)(1). Those policies and practices are supposed to meet three goals: (1) be in accordance with the purposes of sentencing,[2] (2) "provide certainty and fairness," by "avoiding unwarranted sentencing

---

[1] The Commission is an independent agency in the federal judicial branch consisting of seven voting members and one nonvoting member. 28 U.S.C. § 991(a). The members are nominated by the President and confirmed by the Senate. *Id.* At least three of the members must be federal judges, and no more than four of the members can be members of the same political party. *Id.*

[2] The purposes of sentencing are "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2).

5

disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted[,]" and (3) "reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process[.]" *Id.*

The Commission fulfills its purpose by promulgating sentencing guidelines and policy statements. *Id.* § 994(a). Guidelines are used by sentencing courts to calculate "the sentence to be imposed in a criminal case[.]" *Id.* § 994(a)(1). Policy statements, on the other hand, more broadly "regard[] application of the guidelines or any other aspect of sentencing or sentence implementation[,]" including "the sentence modification provisions[.]" *Id.* § 994(a)(2). Guidelines and policy statements are promulgated when there is an "affirmative vote of at least four members" of the Commission.[3] *Id.* § 994(a).

---

[3] "To amend the [g]uidelines, the Commission first must follow a notice-and-comment rulemaking process. Next, the Commission must notify Congress of the proposed revisions to the [g]uidelines. If, after 180 days, Congress does not disapprove or modify the proposed amendments, they then take effect." *United States v. Adair*, 38 F.4th 341, 356 (3d Cir. 2022) (citations omitted).

While "[a]mendments to policy statements … may be promulgated and put into effect at any time[,] … the Commission … endeavor[s] to include amendments to policy statements … in any submission of guideline amendments to Congress and put them into effect on the same … date as any guideline amendments issued in the same year." U.S. Sent'g

## 2. Compassionate Release

The Act "eliminated parole in the federal system[,]" *Peugh*, 569 U.S. at 535, and emphasized that "'[a] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances[,]" *Dillon v. United States*, 560 U.S. 817, 824 (2010) (second alteration in original) (quoting 18 U.S.C. § 3582(b)). One of those circumstances is set forth in 18 U.S.C. § 3582(c)(1)(A)(i), which, with a related subsection, is commonly known as the "compassionate release statute."[4] That statute allows a sentencing court to reduce the sentence of a prisoner if "extraordinary and compelling reasons warrant such a

---

Comm'n, *Rules of Practice & Procedure* § 4.1 (2016), www.ussc.gov/about/rules-practice-and-procedure [https://perma.cc/BHV7-3BDS]. And, although it is not required by statute, "the Commission will endeavor to provide, to the extent practicable, … opportunities for public input on proposed policy statements … considered in conjunction with guideline amendments." *Id.* § 4.3.

[4] Section 3582(c)(1)(A)(ii) is another part of the compassionate release statute and is applicable to defendants serving a mandatory life sentence. It is not relevant to this case.

The two other circumstances in which a district court may modify a sentence are when another statute or Federal Rule of Criminal Procedure 35 permits a sentence modification, § 3582(c)(1)(B), or when a defendant has been sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered by the Commission and certain other requirements are met, § 3582(c)(2).

reduction" and the reduction is consistent with both the Commission's policy statements and the sentencing factors set forth in 18 U.S.C. § 3553(a).[5] A sentencing court must first conclude, as a matter of law, that a prisoner is *eligible* for a sentence reduction before it decides whether he *qualifies* for a reduction. The two concepts – eligibility and qualification – sound similar, but they are distinct. We have explained that "whether any given prisoner has established an extraordinary and compelling reason for release" is a "threshold question" that determines a prisoner's eligibility for compassionate release. *United States v. Stewart*, 86 F.4th 532, 535 (3d Cir. 2023) (internal quotation marks omitted). After a prisoner "clears the threshold eligibility hurdle" of showing "extraordinary and compelling reasons," sentencing courts are then permitted "to exercise broad discretion" to determine whether and to what extent the prisoner warrants, or, in other words, is qualified for, a sentence reduction. *Id.*

---

[5] Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) [the purposes of sentencing listed *supra* note 2]; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range … ; (5) any pertinent policy statement … [;] (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Congress did not define the phrase "extraordinary and compelling reasons" in the compassionate release statute. Instead, it instructed the Commission to define it. 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions … shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). Congress placed only one limitation on the Commission's authority to define the phrase – namely, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

In 2007, the Commission tackled the definitional challenge. It amended a policy statement, § 1B1.13 (the "Policy Statement" or the "Statement'), to provide examples of "extraordinary or compelling reasons" that would allow a prisoner to be eligible for a sentence reduction. The examples include certain medical conditions, severe physical or mental decline, and the death or incapacitation of the primary caregiver of a prisoner's child. U.S.S.G. Supp. App. C, amend. 698 (2007). The Policy Statement also includes a catch-all provision that allows for "an extraordinary and compelling reason other than, or in combination with" the examples, "[a]s determined" by the Bureau of Prisons (the "BOP"). *Id.* In 2016, the Commission added two more examples of extraordinary and compelling reasons related to the age and health of the prisoner. U.S.S.G. Supp. App. C, amend. 799 (2016).

Traditionally, only the BOP was authorized to file a compassionate release motion on behalf of a prisoner;

9

prisoners could not file such motions themselves.[6] That changed in 2018 with passage of the First Step Act, which reduced mandatory minimum sentences for certain drug crimes and opened the door for prisoners to file compassionate-release motions themselves, after they have exhausted administrative remedies through the prison system. Pub. L. No. 115-391, §§ 401, 603(b), 132 Stat. 5194, 5220-21, 5239.

Until the First Step Act was enacted, the Policy Statement defining "extraordinary and compelling reasons" was widely understood to apply only to motions filed by the BOP. U.S.S.G. Supp. App. C, amend. 799 (2016). That was the view of nearly every U.S. Court of Appeals that considered the issue. *See Andrews*, 12 F.4th at 259 (holding that the Policy Statement at the time of the First Step Act's enactment was "not applicable" to prisoner-initiated motions, collecting cases from the Second, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and D.C. Circuits holding the same, and citing to a contrary Eleventh Circuit decision). From 2019 to 2022, due to a lack of a quorum, the Commission did not update the Policy Statement to specify the circumstances that could support a prisoner's compassionate release motion. 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). The timing of the Commission's incapacity was particularly unfortunate because it coincided with the COVID-19 pandemic. That left courts to determine what circumstances qualified as extraordinary and compelling

---

[6] The BOP "used this power sparingly, to say the least." *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020) (summarizing a report finding that, "on average, only 24 incarcerated people per year were released on BOP motion").

10

reasons for prisoner-initiated compassionate-release motions, and there was not uniform agreement.

Relevant here, the courts of appeals are split over whether the First Step Act's nonretroactive changes to certain mandatory minimums could be considered an extraordinary and compelling reason to grant a sentence reduction. The First, Fourth, Ninth, and Tenth Circuits said such changes could be considered, while the Sixth, Seventh, Eighth, and D.C. Circuits said they could not.[7] We considered the issue in *United States*

---

[7] *Compare United States v. Ruvalcaba*, 26 F.4th 14, 24 (1st Cir. 2022) (holding nonretroactive law changes to be an extraordinary and compelling reason), *United States v. McCoy*, 981 F.3d 271, 287-88 (4th Cir. 2020) (same), *United States v. Chen*, 48 F.4th 1092, 1094-95 (9th Cir. 2022) (same), *and United States v. McGee*, 992 F.3d 1035, 1047 (10th Cir. 2021) (same), *with United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc) (declining to consider them extraordinary and compelling), *United States v. Thacker*, 4 F.4th 569, 573-74 (7th Cir. 2021) (same), *United States v. Crandall*, 25 F.4th 582, 585 (8th Cir. 2022) (same), *and United States v. Jenkins*, 50 F.4th 1185, 1198-99 (D.C. Cir. 2022).
The Fifth Circuit issued a precedential opinion saying it could not consider the changes, *United States v. McMaryion*, 64 F.4th 257, 259 (5th Cir. 2023), but it later withdrew that opinion and issued a not precedential one holding the same. *United States v. McMaryion*, 2023 WL 4118015, at *1-2 (5th Cir. June 22, 2023). Ultimately, in *United States v. Jean*, that court decided that it could indeed consider the changes. 108 F.4th 275, 281 (5th Cir. 2024).

*v. Andrews*, 12 F.4th 255 (3d Cir. 2021), the details of which are described herein (*see infra* Section II.A.).

### 3. The 2023 Amendment to the Policy Statement

In April 2023, the Sentencing Commission, by then re-constituted with a quorum, amended the Policy Statement to define "extraordinary and compelling reasons" for prisoner-filed motions for compassionate release. 88 Fed. Reg. 28,254. It issued the amendment in "respon[se] to [the] circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A)."[8] *Id.* at 28,258.

The amended Policy Statement provides that, as a general matter, a law change cannot be considered an extraordinary and compelling reason to grant compassionate release: "[A] change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). But the Statement provides an exception to that rule. Through the following new

---

[8] The amendment also included updates to the traditional extraordinary and compelling reasons provisions – those for medical circumstances, the age of the prisoner, and family circumstances – and added a new basis for relief for prisoners who were victims of abuse while in prison. 88 Fed. Reg. at 28,257-58. Those updates are not at issue in this appeal.

provision, § 1B1.13(b)(6) (hereinafter "(b)(6)"), the Commission explained that nonretroactive changes in law can be considered if certain conditions are met:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

In promulgating subsection (b)(6), the Commission agreed with the "circuits that authorize a district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances[,] … [but] only in narrowly circumscribed circumstances." 88 Fed. Reg. at 28,258. Breaking it down, the newly revised Policy Statement provides that a nonretroactive change in law "may be considered in determining whether the defendant presents an extraordinary and compelling reason" when (1) "a defendant received an unusually long sentence[,]" (2) the defendant "has served at least 10 years of the term of imprisonment," (3) an intervening law change has produced a "gross disparity between the sentence being served and the sentence likely to be imposed at

13

the time the motion is filed," and (4) after the court gives "full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6).

Notably, because (b)(6) states that changes in law *may* (not must) be considered, judges are not required to consider a change in law when determining a prisoner's eligibility for compassionate release. Thus, (b)(6) gives judges the opportunity, but not a mandate, to consider changes in the law under the defined circumstances. Judges therefore have two levels of discretion under (b)(6): first, whether to consider a change in law when determining a prisoner's eligibility for compassionate release, and second, the usual discretion when deciding if an eligible prisoner should receive a sentence reduction after considering the § 3553(a) factors.[9]

The amended Policy Statement went into effect on November 1, 2023, 88 Fed. Reg. at 28,254, but not without controversy. The Commission adopted the amendment by a 4-3 vote. *See* April 5, 2023 United States Sentencing Commission Public Meeting Transcript at 82, available at https://www.ussc.gov/sites/default/files/pdf/amendment-

---

[9] Since one of the § 3553(a) factors that a court must consider when deciding whether to grant a sentence reduction is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[,]" 18 U.S.C. § 3553(a)(6), the amended Policy Statement allows sentencing courts to consider sentence disparities both in making the threshold eligibility determination and in deciding whether to grant compassionate release.

14

process/public-hearings-and-meetings/20230405/20230405_transcript.pdf [https://perma.cc/E9W7-KB6N]. The three dissenting members delivered a joint statement opposing the amendment because, in their view, the Policy Statement "goes further than the Commission's legal authority extends[,]" "make[s] a seismic structural change to our criminal justice system without congressional authorization or directive[,]" and causes "separation of powers problem[s.]" *Id.* at 60-61. They said,

> Today's amendment allows compassionate release to be the vehicle for retroactively applying the very reductions that Congress has said by statute should not apply retroactively. To be sure, it doesn't do so automatically, but it makes any nonretroactive change in law potential grounds for re-sentencing once the defendant has served ten years. In practical effect, it provides a second look to revisit duly imposed criminal sentences at the ten-year mark based on intervening legal developments that Congress did not wish to make retroactive.

*Id.*

The Department of Justice also opposed the change, saying, "[T]he Department has taken the position … that Section 3582(c)(1)(A)(i) does not authorize sentence reductions based on nonretroactive changes in sentencing law. In particular, the Department has repeatedly argued in litigation that the fact that a change in sentencing law is not retroactive is not 'extraordinary' within the meaning of the statute. … The Commission's proposal thus conflicts with the

Department's interpretation [of] Section 3582(c)(2)." Department of Justice Comment Letter, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230223-24/DOJ1.pdf [https://perma.cc/P8A8-5ZYX].

## B. Factual Background and Procedural History

In 2003, 22-year-old Daniel Rutherford committed two armed robberies at a chiropractic office in a five-day period. During the first robbery, he pulled a gun on the chiropractor and stole $390 and a watch. Four days later, he returned to the same office with an accomplice and again brandished a gun and stole $900 in cash and jewelry.

Rutherford was arrested, tried, and convicted of one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), and two counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1). At sentencing, Rutherford faced a 100- to 125-month sentence, plus mandatory minimum consecutive terms of 7 years for the first § 924(c) offense, and 25 years for the second. The District Court sentenced Rutherford to a top-of-the-guidelines term of imprisonment of 125 months in addition to the 32-year mandatory sentence, for a total sentence of nearly 42 and a half years. On appeal, we affirmed Rutherford's conviction. *United States v. Rutherford*, 236 F. App'x 835, 844 (3d Cir. 2007). He did not appeal his sentence. *Id.* at 838. Because of the First Step Act's amendment to § 924(c), if Rutherford were sentenced today, he would be subject to a 14-year mandatory minimum sentence for his two

16

§ 924(c) convictions (7 years for each), 18 years less than 32-year mandatory minimum he received.[10]

Acting pro se, Rutherford has attempted to seek compassionate relief before. He says that he sent a motion for compassionate release to the federal public defender's office in 2020, apparently believing the motion would be filed for him. He later asked the District Court if it had received the motion, and he claims the Court did not respond. In February 2021, he filed with the District Court another handwritten motion for compassionate release. According to Rutherford, the District Court never addressed that motion either.

---

[10] Originally, 18 U.S.C. § 924(c) had required a defendant to be sentenced to a 25-year minimum sentence for each § 924(c) violation after the first, even if the defendant was convicted for both at the same time. The requirement that a defendant receive the 25-year enhanced minimum sentence for each subsequent § 924(c) violation at the same time he was sentenced for the first such offense is often called the "stacking" requirement of § 924(c). *United States v. Hodge*, 948 F.3d 160, 161 n.2 (3d Cir. 2020). The First Step Act eliminated the stacking requirement by amending § 924(c) to require the 25-year sentence for defendants who have a previous § 924(c) conviction only at the time they are sentenced for committing a subsequent § 924(c) offense. Rutherford's two § 924(c)(1) convictions were for brandishing a firearm and were rendered at the same time, so they each triggered a seven-year mandatory minimum, 18 U.S.C. § 924(c)(1)(A)(ii), and the penalties for both counts run consecutively, *id.* § 924(c)(1)(D)(ii).

His third pro se motion for compassionate release came in April 2021. That is the motion at issue here. In it, Rutherford argued to the District Court that the First Step Act's enactment presents an "extraordinary and compelling" reason to grant him compassionate release. He further contended that the § 3553(a) factors support a sentence reduction because, among other things, he had completed over 50 educational courses in prison, he had secured employment upon release, and in the last decade he had committed only two minor infractions in prison. He also said that he has medical conditions – obesity and hypertension – that could "increase[] severity of illness and likelihood of lethality from COVID-19." (J.A. at 83.)

Before the District Court ruled on Rutherford's latest compassionate release motion, we decided *Andrews*, in which, as we shall discuss, we held that the First Step Act's amendment to § 924(c) does not constitute an extraordinary and compelling reason to be eligible for compassionate release. In April 2023, the District Court denied Rutherford's motion, holding that *Andrews* foreclosed his argument that the First Step Act could constitute an extraordinary and compelling reason to justify eligibility for compassionate release.[11]

---

[11] In his motion for compassionate release, Rutherford mentioned his asserted health problems as something the District Court should consider under the 18 U.S.C. § 3553(a) sentencing factors, rather than as a separate basis for compassionate release. Nevertheless, "to the extent that [Rutherford]'s request could [have] be[en] construed to seek health related compassionate release, the Court [also found] no

18

Rutherford timely appealed.[12] We instructed the parties to discuss in their briefing

> (1) whether this Court should consider the impact of amendments to the Sentencing Guidelines on an 18 U.S.C. § 3582(c) motion in the first instance on appeal; and, assuming so, (2) to what extent, if any, the 2023 amendment to § 1B1.13(b) of the Sentencing Guidelines

compelling or extraordinary health related circumstances presented in his various Motions." (J.A. at 7-8.)

[12] The government responded to Rutherford's appeal with a motion for summary affirmance. Finally with counsel, Rutherford opposed the government's motion and requested that we stay the matter pending an anticipated amendment to the Policy Statement. The amended Policy Statement went into effect on November 1, 2023, before we ruled on the parties' motions. The government then filed a response in opposition to Rutherford's motion to stay the appeal and, because of the amended Policy Statement, we denied the motion to stay as moot.

On appeal, Senators Dick Durbin and Cory Booker, members of the Senate Judiciary Committee, filed an amicus brief in favor of Rutherford, as did, jointly, the National Association of Criminal Defense Lawyers, FAMM (formerly known as Families Against Mandatory Minimums), and the Federal Public Defenders and Community Defenders for the Judicial Districts of the Third Circuit. We are grateful for the additional insights provided.

Manual abrogates this Court's decision in *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021).

(3d Cir. D.I. 16.)

## II.  DISCUSSION[13]

On appeal, Rutherford argues that, even though the District Court did not have an opportunity to consider it, we should address the effect of the new (b)(6) provision of the Policy Statement on his compassionate release motion, including whether it abrogates our holding in *United States v. Andrews*.  He asserts that *Andrews* is not in conflict with the amended Policy Statement and that, ultimately, we should remand the case so he has "an opportunity to show the [D]istrict [C]ourt that he qualifies for compassionate release under the new [P]olicy [S]tatement." (Opening Br. at 50.)  The government, on the other hand, argues that we should not consider the amended Policy Statement for the first time on appeal and that the (b)(6) provision is invalid, both as applied to the First Step Act and on its face, because the "provision exceeds the Commission's statutory authority to define the bases of compassionate release[.]" (Answering Br. at 11.)

---

[13] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review a district court's determination denying compassionate release for abuse of discretion. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).  Issues of statutory construction are reviewed de novo. *Id.*

## A.    *Andrews*

We begin with a review of our *Andrews* decision.  Eric Andrews was sentenced in 2006 and was serving a 312-year sentence for a series of armed robberies.  *Andrews*, 12 F.4th at 257.  He filed a compassionate release motion, arguing that his case presented "extraordinary and compelling reasons" warranting a reduced sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  *Id.*  The gist of his motion was that he would have received a 91-year sentence had he been sentenced after the First Step Act's passage.  *Id.*

Before we addressed the specific reasons Andrews advanced for his assertion that he was entitled to compassionate release, we first concluded that the Policy Statement, in its then-existing form,[14] was "not applicable – and not binding – for courts considering prisoner-initiated motions" because "the text of the [P]olicy [S]tatement explicitly limit[ed] its application to Bureau-initiated motions."  *Id.* at 259.  We then said it was not error for the district court to "consult[] the text, dictionary definitions, and the [P]olicy [S]tatement to form a working definition of 'extraordinary and compelling reasons[,]'" in part, because the Policy Statement, even if not binding, "still sheds light" on the meaning of that phrase.  *Id.* at 260.  Furthermore, "[b]ecause Congress reenacted the compassionate-release statute without any alterations to the phrase 'extraordinary and compelling reasons,'" we believed "it was reasonable … to conclude that the phrase largely retained the meaning it had under the

_____

[14] *Andrews* was decided in 2021; the Policy Statement was amended in 2023.

21

previous version of the statute[,]" which did not mention nonretroactive changes in the law. *Id.*

After resolving those preliminary questions, we turned to the specific arguments Andrews advanced for why he was entitled to compassionate release. He claimed his case presented six reasons that, in combination, "were extraordinary and compelling under the compassionate-release statute": (1) "the duration of his sentence," (2) the First Step Act's changes to the mandatory minimums in his case, (3) "his rehabilitation in prison," (4) "his relatively young age at the time of his offense," (5) the abusive prosecutorial "decision to charge him with thirteen § 924(c) counts," and (6) "his alleged susceptibility to COVID-19." *Id.* at 258 (cleaned up).

Taking up those contentions, we first considered whether the duration of Andrews's sentence could constitute an extraordinary and compelling reason and so allow a sentence reduction. *Id.* We held that "[t]he duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance[,]" *id.* at 260-61, because "'there is nothing extraordinary about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute[,]'" *id.* at 261 (quoting *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) (internal quotation marks omitted)). "Moreover," we said, "considering the length of a statutorily mandated sentence as a reason for modifying a sentence would infringe on Congress's authority to set penalties." *Id.* at 261.

Next, we concluded that the second reason Andrews advanced – namely, the First Step Act's nonretroactive changes to the § 924(c) mandatory minimums – "also cannot

22

be a basis for compassionate release." *Id.* at 261. We explained that, "[i]n passing the First Step Act, Congress specifically decided that the changes to the § 924(c) mandatory minimums would not apply to people who had already been sentenced." *Id.* at 261. And nonretroactive sentencing changes are "conventional[,]" because, as the Supreme Court has observed, "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Id.* (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)). So, "'[w]hat the Supreme Court views as the ordinary practice cannot also be an extraordinary and compelling reason to deviate from that practice.'" *Id.* (quoting *United States v. Wills*, 997 F.3d 685, 688 (6th Cir. 2021) (internal quotation marks omitted)).

We went on to say that, "when interpreting statutes, we work to 'fit, if possible, all parts' into a 'harmonious whole.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). Thus, we would "not construe Congress's nonretroactivity directive [in the First Step Act] as simultaneously creating an extraordinary and compelling reason for early release" because "[s]uch an interpretation would sow conflict within the [First Step Act]." *Id.* (citing *United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) ("Why would the same Congress that specifically decided to make these sentencing reductions non-retroactive in 2018 somehow mean to use a general sentencing statute from 1984 to unscramble that approach?")). We added this caveat: nonretroactive sentencing reductions may be relevant to a prisoner's compassionate release motion, but only if and after "a prisoner successfully shows extraordinary and compelling circumstances," because "the current sentencing landscape

23

may be a legitimate consideration for courts … when they weigh the § 3553(a) factors." *Id.* at 262.

Finally, we held that the district court did not abuse its discretion in determining "that Andrews's four remaining reasons collectively fell short of being extraordinary and compelling under the statute." *Id.* at 259. Therefore, we affirmed the denial of his compassionate-release motion. *Id.* at 262.

**B.      We Can Properly Consider the Amended Policy Statement in the First Instance.**

The government asserts that we are forbidden from resolving in the first instance the effect of (b)(6) on *Andrews* because the amended Policy Statement "is a substantive amendment that does not apply on appeal." (Answering Br. at 11.)      According to the government, only clarifying amendments, as opposed to substantive ones, are applicable on appeal when the amendment in question arose after sentencing. And, says the government, "[t]here is no question that the revision of [the Policy Statement] is substantive; it addressed for the first time inmates' new capacity to file compassionate release motions, and significantly revised, altered, and added to the permissible bases for compassionate release." (Answering Br. at 13.)      Rutherford responds that the substantive-versus-clarifying test applies only to changes affecting an initial sentence.

As to initial sentencing, "[t]he general rule is that a defendant should be sentenced under the guideline in effect at the time of sentencing." *United States v. Diaz*, 245 F.3d 294, 300-01 (3d Cir. 2001). "A post-sentencing amendment to a

24

guideline, or to its comments, should be given retroactive effect only if the amendment 'clarifies' the guideline or comment in place at the time of sentencing; the amendment may not be given retroactive effect if it effects a substantive change in the law." *Id.* at 303. "Generally, if the amended guideline and commentary overrules a prior judicial construction of the guidelines, it is substantive; if it confirms our prior reading of the guidelines and does not disturb prior precedent, it is clarifying." *Id.*

While the substantive-versus-clarifying test clearly applies in the initial sentencing context, we agree with Rutherford that the test does not apply to a sentence modification.[15] The government does not cite any within-Circuit precedent suggesting otherwise, and we have found none. Perhaps that is because the test rests primarily on § 1B1.11 of the guidelines, a provision that applies to initial sentencing proceedings, rather than sentence reduction proceedings like compassionate release. Section 1B1.11 says that, "if a court applies an earlier edition of the Guidelines Manual" to avoid ex post facto concerns, "the court shall

---

[15] We part ways here with the Eleventh Circuit. *United States v. Handlon*, 97 F.4th 829, 833 (11th Cir. 2024) (holding that the amended Policy Statement is a substantive amendment that cannot be given retroactive effect). We also note that the Fifth Circuit did not apply the amended Policy Statement to a motion filed before the Policy Statement was amended, saying summarily that the amendment was "not in effect at the time the district court granted [the] motion, and thus [] not [part] of the [g]uidelines that we consider on appeal in terms of binding application." *Jean*, 108 F.4th at 288.

consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes."[16]

---

[16] Section 1B1.11 provides:

(a) The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.

(b)(1) If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

(2) The Guidelines Manual in effect on a particular date shall be applied in its entirety. The court shall not apply, for example, one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual. However, if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes.

(3) If the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the

Since ex post facto concerns do not arise when a sentence is being reduced, the modification proceedings do not implicate the concerns underlying the substantive-versus-clarifying test.

Rutherford also points out the absurd outcomes that could result were we to conclude that (b)(6) is a substantive amendment. He explains that "inmates sentenced before November 1, 2023[, i.e., the date the amended Policy Statement became effective,] would forever be barred from using the new policy statement." (Reply Br. at 4 n.1.) "It would also mean (b)(6) – which requires inmates to have served ten years in prison – would not apply to any prisoner's motion until November 1, 2033." (Reply Br. at 4 n.1.) We highly doubt those results were what Congress intended when passing the First Step Act, so we will not apply the substantive-versus-clarifying test to the Policy Statement at issue here.

Moreover, the government concedes that Rutherford could file a new compassionate release motion if we were to deny application of (b)(6) in this case. The implication is that (b)(6) would then be applicable to the new motion. As we have

---

Guidelines Manual is to be applied to both offenses.

U.S.S.G. § 1B1.11. *See United States v. Flemming*, 617 F.3d 252, 267 (3d Cir. 2010) (explaining the substantive-versus-clarifying test and citing to § 1B1.11(b)(2)); *United States v. Spinello*, 265 F.3d 150, 160 (3d Cir. 2001) (same); *United States v. Marmolejos*, 140 F.3d 488, 490-91 (3d Cir. 1998) (same).

said in a similar sentencing reduction context, "we see no need to force [the appellant] to take this additional step." *United States v. Marcello*, 13 F.3d 752, 756 n.3 (3d Cir. 1994); *see also United States v. Jones*, 567 F.3d 712, 719 (D.C. Cir. 2009) ("Nearly all courts of appeals that have considered the issue have decided … to save the defendant the 'additional step' of petitioning the district court for a sentencing modification.").

In *United States v. Stewart*, we recognized that amendments to the Commission's policy statements could potentially impact our holding in *Andrews*. 86 F.4th at 535 ("*Absent changes* in the applicable policy statements, our holding in *Andrews* remains undisturbed – and with it the limits imposed on courts' discretion when determining whether extraordinary and compelling reasons warrant relief." (emphasis added)). We acknowledged the amended Policy Statement, which had become effective two weeks prior to *Stewart*'s filing, but we did not consider it in that case, saying, instead, that "[w]e may consider [its] effect on the validity of *Andrews* in an appropriate case." *Id.* at 535 n.2.

Rutherford argues that this is the case to decide the issue. He contends that the question involves a "novel, important, and recurring" "uncertainty in the law," and that the government has briefed the issue in over twelve cases in the Eastern District of Pennsylvania alone. (Opening Br. at 22 (quoting *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017)).) He says that "[i]t hinders judicial efficiency to send an issue … to the district court that the district court will simply send back" on appeal again. (Opening Br. at 22.) We agree.

28

While it is true that "[w]e generally decline to resolve issues not decided by a district court, choosing instead to allow it to decide in the first instance[,]" *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022), "[w]hen a district court has failed to reach a question … that becomes critical when reviewed on appeal, an appellate court may sometimes resolve the issue on appeal rather than remand to the district court[,]" *Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 159 (3d Cir. 1998). "[That] procedure is generally appropriate when the factual record is developed and the issues provide purely legal questions, upon which an appellate court exercises plenary review." *Id.* Deciding a legal question in the first instance on appeal is especially proper if "our resolution … will best serve the interests of judicial efficiency on remand," *Kedra v. Schroeter*, 876 F.3d 424, 436 n.5 (3d Cir. 2017), or when "the issue's resolution is of public importance[,]" *Loretangeli v. Critelli*, 853 F.2d 186, 189 n.5 (3d Cir. 1988).

Those considerations are operative here. The question of what, if any, effect (b)(6) has on our precedent is purely a legal one, and it is indeed a question of public importance – there are many people in prison whose sentences will be affected by our decision.[17] And resolving the question will

---

[17] Referencing a BOP publication, Rutherford says that "2,412 people – 1.5% of the total inmate population – are serving stacked § 924(c) sentences[,]" who must, according to their individual circumstances, show that they are eligible. (Opening Br. at 35 (citing U.S. Sent'g Comm'n., *Estimate of the Impact of Selected Sections of S. 1014, The First Step Act Implementation Act of 2021*, at 1 (Oct. 2021) [https://perma.cc/8VC8-25A7]).

29

serve the interests of judicial efficiency. If we refrain from deciding it, the various district courts that are, at present, grappling with the question may reach divergent conclusions.[18]

---

[18] We do have the benefit of a well-reasoned district court decision now, *United States v. Carter*, 711 F.Supp.3d 428 (E.D. Pa. 2024). Johnnie Carter was serving a 70-year sentence for a string of armed robberies, a sentence much longer than the one he would have received today because of the First Step Act's modification of § 924(c). *Id.* at 430. The district court noted that "it is undisputed Carter's motion for a new sentence identifies an 'extraordinary and compelling reason,' as defined by the … Commission[.]" *Id.* at 435. Yet, the court explained that "*Andrews* remains binding law in this circuit, and it forecloses Carter's argument that he is eligible for compassionate release[.]" *Id.* at 436. That is because, the court said, the policy statement "is incompatible with *Andrews*'s interpretation of the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i), and its holding that 'the duration of [a defendant's] sentence and the nonretroactive changes to mandatory minimums' is not one of the 'extraordinary and compelling reasons' described by the statute." *Id.* (quoting *Andrews*, 12 F.4th at 260 (alterations in original)). Carter argued that the amended Policy Statement abrogated *Andrews*, but the court in *Carter* said that his argument "ha[d] it exactly backwards":

> In the absence of an applicable policy statement from the Sentencing Commission, *Andrews* can only be understood as a decision interpreting the text of the compassionate-release statute itself. And after considering that statutory language,

30

The parties have briefed the issue, and it is ripe for our consideration. Accordingly, we will resolve the (b)(6) question as it relates to First Step Act's change to § 924(c).

> the Third Circuit concluded that a defendant's unusually and disproportionately long sentence is not an "extraordinary and compelling reason[] warrant[ing] [] a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). That holding may not now be overridden by the Sentencing Commission, which "does not have the authority to amend the statute [the court] construed" in a prior case. *Neal v. United States*, 516 U.S. 284, 290 (1996).

*Id.* at 436-37 (first alteration not in original). The court acknowledged "that *Andrews* was decided without the benefit of input from" the Commission and that, "[i]f given the opportunity to do so, the Third Circuit might well elect to reconsider its prior holding to give the Sentencing Commission's expertise its fair due." *Id.* at 437. "But, as things currently stand," the court went on, "binding precedent instructs that a defendant's unusually long sentence is not an adequate basis for compassionate release. Unless and until any reconsideration of *Andrews* takes place or it is abrogated by a Supreme Court decision, that holding remains binding on district courts in this circuit." *Id.* at 437-38. Carter appealed, and we stayed his appeal pending resolution of this case.

31

**C.** **The Amended Policy Statement Does Not Abrogate *Andrews*.**[19]

      1.    <u>Subsection (b)(6) of the Amended Policy Statement Is Inconsistent with the First Step Act.</u>

The government does not dispute that the Commission possesses the authority to promulgate policy statements for prisoner-initiated compassionate-release motions, at least not to the extent such statements relate to the traditional bases for compassionate release. (Answering Br. 25 n.5 ("As a general rule, … the Commission's new policy statement, that clarifies eligibility based on medical, family, and other traditional bases for compassionate release, is binding.").) The government "objects only to the new 'change in law' provision [i.e., (b)(6)] as exceeding statutory authority." (Answering Br. at 25-26 n.5.) Thus, we consider only whether (b)(6) is binding on a court's compassionate release eligibility determinations when deciding a motion based in whole or in part on the First Step Act's change to § 924(c).

As explained previously (*see supra* Section I.A.2.), a sentencing court may grant a compassionate release motion if,

---

[19] As noted (*see supra* Section I.A.2.), prior to the Commission promulgating the amended Policy Statement, several courts of appeals held that the First Step Act's nonretroactive changes to certain mandatory minimums could not be considered an extraordinary and compelling reason to grant a sentence reduction. We are aware of no case in which any of those courts of appeals has addressed the impact on the amended Policy Statement on its precedent.

"after considering the factors set forth in section 3553(a) to the extent that they are applicable, it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress instructed "[t]he Commission, in promulgating general policy statements regarding the sentencing modification provisions … [to] describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."[20] 28 U.S.C. § 994(t).

When Congress expressly delegates the power to an agency to "prescribe standards for determining" the meaning of a particular term or phrase, as it did here for the phrase "extraordinary and compelling," "Congress entrusts to the [agency], rather than to the courts, the primary responsibility for interpreting the statutory term." *Batterton v. Francis*, 432

---

[20] The government does not dispute the constitutionality of Congress's delegation to the Commission of the responsibility to describe what should be considered "extraordinary and compelling." Nor is it likely it could successfully do so. It is true that "Congress generally cannot delegate its legislative power to another Branch" and that the "nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371-72 (1989). But the Supreme Court has said that it "harbor[s] no doubt that Congress'[s] delegation of authority to the Sentencing Commission is sufficiently specific and detailed to meet constitutional requirements." *Id.* at 374.

U.S. 416, 425 (1977).  Consistent with that principle, the Supreme Court said in *Concepcion v. United States* that, in sentence reduction proceedings like those involving compassionate release, Congress has "cabined district courts' discretion by requiring courts to abide by the Sentencing Commission's policy statements."  597 U.S. 481, 495 (2022).  We thus do not gainsay that the Commission's policy statements are generally binding on us.  *United States v. Berberena*, 694 F.3d 514, 522 (3d Cir. 2012) ("Congress contemplated that the Commission would have the power to impose limits on … sentence reductions, by making the Commission's policy statements binding.").

That said, the Commission's authority to issue binding policy statements is not unlimited.  The Supreme Court has also explained that, although "Congress has delegated to the Commission significant discretion[,]" "it must bow to the specific directives of Congress" and accurately reflect Congressional intent when it fulfills its responsibilities. *United States v. LaBonte*, 520 U.S. 751, 757 (1997) (internal quotation marks omitted).  Indeed, Congress has granted the Commission power to promulgate only those policy statements that are "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a).  It is the job of the courts to ensure that the Commission's amendments to its policy statements do not go beyond what Congress intended.  *United States v. Adair*, 38 F.4th 341, 359 (3d Cir. 2022) (concluding that a particular amendment set forth by the Commission "ha[d] no force of law" because it "exceed[ed] the Commission's delegated powers); *cf. Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2263 (2024) (explaining that "the role of the reviewing court under the [Administrative Procedures Act] is … to independently interpret the statute and effectuate the will of

34

Congress subject to constitutional limits" and that "the court fulfills that role by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decisionmaking within those boundaries." (cleaned up)).

We agree with the government that subsection (b)(6) in the amended Policy Statement, as applied to the First Step Act's modification of § 924(c), conflicts with the will of Congress and thus cannot be considered in determining a prisoner's eligibility for compassionate release. Congress explicitly made the First Step Act's change to § 924(c) *non*retroactive. Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5222. And, in *Andrews*, we held that it would be inconsistent "with [the] pertinent provisions of [the First Step Act]," 28 U.S.C. § 994(a), to allow the amended version of § 924(c) to be considered in the compassionate release context because "Congress specifically decided that the changes to the § 924(c) mandatory minimums would not apply to people who had already been sentenced." *Andrews*, 12 F.4th at 261.

Just as we said in *Andrews*, we will "not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release[,]" because "[s]uch an interpretation would sow conflict within the statute."[21] *Id.* Simply put, allowing the

---

[21] As stated previously (*see supra* Section I.A.4.), Congress did not act to modify or disapprove of the amended Policy Statement. But, as the government notes, and as Rutherford does not dispute, "Congress'[s] failure to reject" the amended Policy Statement does not "mean[] that it has

change to § 924(c) to be considered when determining compassionate release eligibility does not align with "the specific directives [that] Congress" set forth in the First Step Act.[22] *LaBonte*, 520 U.S. at 757.

---

effectively adopted that interpretation with respect to the statute." *DePierre v. United States,* 564 U.S. 70, 87 n.13 (2011); *Kimbrough v. United States*, 552 U.S. 85, 106 (2007) ("Ordinarily, we resist reading congressional intent into congressional inaction.").

[22] The preceding discussion also explains why Rutherford's "statutory context" argument fails. (Opening Br. at 39.) In his view, in § 994(t), "Congress placed only one limit on the Commission's authority to describe 'extraordinary and compelling reasons' for relief": "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." (Opening Br. at 39 (quoting 28 U.S.C. § 994(t)).) He says that "Section 994(t) shows that Congress knew how to speak clearly when it wanted to exclude topics from consideration." (Opening Br. at 39.) Rutherford's argument would have more persuasive effect if the compassionate release statute were viewed in isolation, but we can undertake no such approach. Because the Commission may only promulgate policy statements that are consistent with all "pertinent provisions of any Federal statute[,]" 28 U.S.C. § 994(a), the Commission is inherently limited from creating policy statements that negate other relevant federal statutes, like the First Step Act's nonretroactivity directive.

### 2. *Andrews* and the Amended Policy Statement are in Conflict.

Rutherford argues, however, that, in reality, "there is no conflict" between the amended Policy Statement and *Andrews* because our holding there was relatively narrow. (Opening Br. at 28.) He asserts that "[t]he argument *Andrews* rejected was that a nonretroactive change, *by itself*," could create an extraordinary and compelling reason. (Opening Br. at 28 (emphasis added).) The government retorts that *Andrews* "determined that a change in the law, whether considered alone or in combination with other factors," cannot be considered when making a compassionate-release eligibility determination. (Answering Br. at 23.) We do not have to rule as broadly as the government might like; it is enough to say that the government is right in this instance. The question we are addressing calls for an examination of § 924(c), not a far-ranging examination of all changes in laws affecting criminal sentences. And we have already thoroughly examined the § 924(c) change in *Andrews*.[23]

---

[23] We are not suggesting that a change in law could never be considered in the compassionate release eligibility context. Our holding is solely that the First Step Act's change to § 924(c) cannot be considered in that context, on its own or with other factors, because of Congress's explicit instruction in that statute that the change be nonretroactive.

We also acknowledge that in *Stewart*, we used language to summarize our holding in *Andrews* that may have suggested our conclusion in *Andrews* was broader than it was. *United States v. Stewart*, 86 F.4th 532, 533 (3d Cir. 2023) ("[I]n *Andrews* we held that neither the length of a lawfully imposed

As a reminder, the defendant in *Andrews* advanced six reasons that he claimed, "*together*, … were extraordinary and compelling under the compassionate-release statute." *Andrews*, 12 F.4th at 258 (emphasis added). We noted that the district court in that case "concluded that two of the proposed reasons – the duration of Andrews's sentence and the nonretroactive changes to mandatory minimums [in § 924(c)] – could not be extraordinary and compelling as a matter of law." *Id.* at 258. We upheld that conclusion. And we clarified that, although the district court appropriately excluded those two reasons from the eligibility analysis, "we [were] not saying that they are always irrelevant to the sentence-reduction inquiry" because they "may be a legitimate consideration for courts at the next step of the analysis when [a court] weigh[s]

---

sentence nor *any* nonretroactive change to mandatory minimum sentences establishes 'extraordinary and compelling' circumstances warranting release." (emphasis added)). *Andrews*'s holding itself was confined to the § 924(c) context. *See Andrews*, 12 F.4th at 261 (holding that "[t]he nonretroactive changes to the § 924(c) mandatory minimums also cannot be a basis for compassionate release" and referring to the § 924(c) mandatory minimums by using phrases like "*the* nonretroactive changes to mandatory minimums" (emphasis added)). In fact, *Andrews*'s discussion of the First Step Act makes it evident that we were specifically considering whether the changes to § 924(c) could be considered extraordinary and compelling when Congress had specifically made those changes nonretroactive. Accordingly, we view our holding in *Andrews* as confined to the § 924(c) context.

the § 3553(a) factors."[24] *Id.* at 262. We also upheld the district court's decision that "Andrews's four remaining reasons *collectively* fell short of being extraordinary and compelling under the statute." *Id.* at 259 (emphasis added). Therefore, at bottom, our holding in *Andrews* was that the nonretroactive change to § 924(c), whether by itself or in combination with other factors, cannot be considered in the compassionate release eligibility context.

We stand by that ruling today. When it comes to the modification of § 924(c), Congress has already taken retroactivity off the table, so we cannot rightly consider it. *See United States v. Jean*, 108 F.4th 275, 295 (5th Cir. 2024) (Smith, J., dissenting) ("[P]resenting two insufficient things is different from presenting an insufficient thing together with something we are legally prohibited from considering because it is outside the scope of, or prohibited by, the statute.").

---

[24] Congress enumerated "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" as a factor that must be considered after a prisoner is determined eligible for compassionate release, which suggests that Congress intended courts to consider changes in law at the post-eligibility phase, rather than as a part of the eligibility determination. 18 U.S.C. § 3553(a)(6).

3.  Even if an Ambiguity Analysis is Required in this Case, Our Holding in *Andrews* Trumps the Amended Policy Statement in the § 924(c) Context.

Rutherford argues that even if there were a conflict between the amended Policy Statement and *Andrews*, "the Commission's reading would control" because, in his view, "[t]he government [did not show] that the compassionate release statute unambiguously forecloses the policy statement." (Opening Br. at 28, 30.) He says that "[t]he government cannot make that showing because *Andrews* already recognized that the phrase 'extraordinary and compelling' is 'amorphous' and 'ambiguous.'" (Opening Br. at 31 (quoting *Andrews*, 12 F.4th at 60).) The government responds that, "while the full reach of the term is doubtless imprecise, necessitating action of the Commission, the term is not at all ambiguous as applied to the specific context of a nonretroactive change in law."[25] (Answering Br. at 36.) The

_____

[25] Rutherford also says that the government itself acknowledged at oral argument before the District Court that "[e]xtraordinary and compelling is not the most unambiguous statement that anyone has ever made." (Opening Br. at 31 (quoting J.A. at 190).) But he does not mention that the government also advanced the same argument it does here, namely, that the statute is unambiguous as it relates to a nonretroactive change in the law. (J.A. at 191 ("Ambiguous as the term extraordinary and compelling is, it does not fit where what your circumstance is is a change in law that Congress had declared nonretroactive.").)

40

government again has the better of the arguments, at least insofar as it addresses the change in § 924(c).

Whatever else the Commission may be empowered to do, it plainly "may not replace a controlling judicial interpretation of an *unambiguous* statute with its own construction (even if that construction is based on agency expertise)[.]"[26] *Adair*, 38 F.4th at 361 (emphasis added). And on retroactivity, the change to § 924(c) is not the least ambiguous. Congress made the change non-retroactive. No matter how well-intentioned, the Policy Statement cannot change that.

In *Loper Bright Enterprises v. Raimondo*, the Supreme Court overturned the long-standing rule that courts must defer to agency interpretations of statutes within an agency's expertise. The Court said such so-called *Chevron* deference

---

[26] Relying on *Braxton v. United States*, 500 U.S. 344 (1991), Rutherford says that the Commission has the power to overturn Circuit precedent and resolve circuit splits and, thus, we must defer to the Commission's amended Policy Statement. (Opening Br. at 28-29.) But the guideline provision at issue in *Braxton* did not conflict with an unambiguous congressional statute. 500 U.S. at 346-48. And, as *Braxton* itself recognized, the Commission is not the only body that can resolve a split in judicial authority concerning the Guidelines. "Congress itself can eliminate a conflict concerning a statutory provision by making a clarifying amendment to the statute." *Id.* at 347-48. That is what happened here when Congress unambiguously stated that the First Step Act's amendment of § 924(c) was not retroactive. The Commission cannot override that command.

41

was the "antithesis" of "the traditional conception of the judicial function[,]" especially when "it forces courts to [defer] even when a pre-existing judicial precedent holds that the statute means something else – unless the prior court happened to also say that the statute is 'unambiguous.'" 144 S. Ct. 2244, 2263, 2265 (2024) (citing *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005)). That ruling was made when considering the Administrative Procedures Act, which, admittedly, is not what we look to when considering actions of the Commission. *See United States v. Berberena*, 694 F.3d 514, 527 (3d Cir. 2012) ("Congress decided that the … Commission would not be an 'agency' under [that Act] when it established the Commission as an independent entity in the judicial branch." (internal quotation marks omitted)). But *Loper Bright* is still instructive as we assess the assertion that the Commission's view of a statute should trump our own.

The Supreme Court has explained that the "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning *with regard to the particular dispute in the case*." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (emphasis added). The particular dispute in *Andrews* was whether the "nonretroactive changes to the § 924(c) mandatory minimums [could] be a basis for compassionate release[,]" or in other words, whether such changes could be considered "extraordinary and compelling." *Andrews*, 12 F.4th at 261. We did not use the terms "amorphous" and ambiguous" to describe that particular question; we used them only to explain that the district court did not err in using traditional methods of statutory interpretation to come to its own conclusion that "extraordinary and compelling" did not encompass that change

42

in the law.[27]  *Andrews*, 12 F.4th at 260.  And while it is true that we did not say that the phrase "extraordinary and compelling" was "unambiguous" as applied to the § 924(c) change, we need not make such an explicit statement to communicate the point.  *See Bastardo-Vale v. Attorney General*, 934 F.3d 255, 259 n.1 (3d Cir. 2019) (en banc) ("[The] use of words like 'suggest' or 'implies,' when viewed

---

[27] We said:

> To start, the District Court did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of "extraordinary and compelling reasons."  Given that the compassionate-release statute does not define "extraordinary and compelling reasons," the court looked to those resources to give shape to the otherwise amorphous phrase.  That was not error.  "We look to dictionary definitions to determine the ordinary meaning of a word … with reference to its statutory text."  *Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 200 (3d Cir. 2015).  And courts may consider an extrinsic source like the policy statement if, like here, it "shed[s] a reliable light on the enacting Legislature's understanding of [an] otherwise ambiguous term[]."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568[] (2005).

*Andrews*, 12 F.4th at 260.

in context … conveys that [the court] viewed the statute as clear.").[28]

In sum, the amended Policy Statement conflicts with *Andrews*, and *Andrews* controls. Therefore, the First Step Act's change to § 924(c) cannot be considered in the analysis of whether extraordinary and compelling circumstances make a prisoner eligible for compassionate release.

## III. CONCLUSION

For the foregoing reasons, we will affirm the District Court order denying Rutherford's compassionate release motion.

---

[28] In any event, an ambiguity determination comes only after courts apply traditional tools of statutory construction. *Cf. Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984) ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."), *overruled by Loper Bright*, 144 S. Ct. 2244. So the fact that the district court in *Andrews* used traditional tools of statutory interpretation does not automatically mean that the statute can be called ambiguous with respect to the particular issue in this case.

44