**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOSE ANGEL BELTRAN-MORENO, aka
El Tan Beltran,
*Defendant-Appellant.*

No. 07-10368

D.C. No.
CR-05-00546-NVW

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ABRAHAM BELTRAN-MORENO, aka
Abram aka Abram Beltran-Moreno
aka Adrian Beltran-Figueroa,
*Defendant-Appellant.*

No. 07-10370

D.C. No.
CR-05-00546-NVW

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Submitted January 15, 2009*
San Francisco, California

Filed February 10, 2009

Before: Procter Hug, Jr., Stephen Reinhardt and
A. Wallace Tashima, Circuit Judges.

---

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Opinion by Judge Reinhardt

**COUNSEL**

Brian G. Larson, Assistant United States Attorney, United States Attorney's Office for the District of Arizona, Phoenix, Arizona, for the plaintiff-appellee.

Lynn T. Hamilton, Hamilton Law Office, Mesa, Arizona, for defendant-appellant Jose Beltran-Moreno.

James Sun Park, Park Law Office, Phoenix, Arizona, for defendant-appellant Abraham Beltran-Moreno.

**OPINION**

REINHARDT, Circuit Judge:

After pleading guilty to a multiple-count indictment charging, *inter alia*, two independent firearms counts under 18 U.S.C. § 924(c), Jose and Abraham Beltran-Moreno benefitted from the district court's erroneous construction of that statute at sentencing. They should have quit while they were

ahead. As the Supreme Court made clear fifteen years ago in *Deal v. United States*, 508 U.S. 129 (1993), when the government charges more than one § 924(c) offense in a single indictment, each additional count is to be treated as a "second or subsequent conviction" for purposes of 18 U.S.C. § 924(c)(1)(C)(i) and therefore carries a mandatory minimum sentence of twenty-five years. Because § 924(c)(1)(D)(ii) requires that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed," each independent § 924(c) count in the indictment imposes a *consecutive* sentence on top of any other sentence imposed, either under § 924(c) or under any other counts for which the defendant has been convicted.

In this case, the defendants pled guilty to various drug offenses that, taken together, imposed a mandatory minimum sentence of ten years.[1] They also pled guilty to two § 924(c) charges, the first of which required a mandatory minimum sentence of five years and the second of which required an additional sentence of twenty-five years. Because the statute does not allow any of these sentences to run concurrently, the mandatory minimum sentence for both defendants was forty years in prison.

The district court, however, was not familiar with *Deal*. Accordingly, despite the government's argument for a forty-year minimum sentence, the court held, quite understandably,

---

[1]We note for the record that there appears to be an error in the formal judgments of conviction for both defendants. *Compare* Reporter's Transcript of Proceedings (Status Conference/Change of Plea) at 35-37, *United States v. Beltran-Moreno*, No. 05-00546-NVW (D. Ariz. March 8, 2007) (No. 452), *and* Superceding Indictment at 3, *Beltran-Moreno*, No. 05-00546-NVW (D. Ariz. June 8, 2005) (No. 43) (showing surplusage crossed-out), *with* Judgment in a Criminal Case at 1, *Beltran-Moreno*, No. 05-00546-NVW (D. Ariz. July 7, 2007) (Nos. 392, 393) (formal judgments including surplusage). Because these discrepancies have no bearing on this appeal and were not raised by the parties, we note them simply in the event that they may be relevant for some future proceeding.

that multiple § 924(c) counts in a single indictment do not trigger the "second or subsequent" provision. As a result, the court added only two five-year sentences — as opposed to a five-year sentence and a twenty-five-year sentence — to the ten-year minimum required by the drug offenses. This was error, the result of which was the calculation of a mandatory minimum sentence of twenty years, which was twenty years *lower* than that required by statute, a sentence that would seem quite reasonable, but for the Court's decision in *Deal*.

Remarkably, the defendants' good fortune did not stop here. Under the United States Sentencing Guidelines, each defendant's offense conduct established an offense-level score of over forty-two points. Regardless of a defendant's criminal history, the Guidelines recommend that someone convicted of so high an offense level be sentenced to no less than life in prison. *See* U.S.S.G. § 5A. However, as has been clear since *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are now merely advisory. The Beltrans were fortunate enough to be sentenced by a district judge who appears to have taken *Booker*'s mandate to heart. Taking into account the defendants' characteristics, the nature of their crimes, and other relevant factors, the district judge exercised his discretion under 18 U.S.C. § 3553(a) to depart downward from the Guidelines recommendation, sentencing the defendants to thirty-five years in prison instead of imprisoning them for the rest of their lives as the Guidelines suggest, but no longer mandate.

In the end, the defendants did not just avoid life sentences. Because of the district court's unawareness of *Deal*, they received sentences five years *below the mandatory minimum*. Such good fortune does not come often in our criminal justice system, especially in prosecutions under § 924(c), which frequently result in extremely harsh sentences. *Cf. United States v. Hungerford*, 465 F.3d 1113, 1119 (9th Cir. 2006) (Reinhardt, J., concurring in the judgment) (criticizing a sentence of 159 years imposed pursuant to § 924(c) on "a 52 year-old

mentally disturbed woman with no prior criminal record" who never touched a gun and believed herself to be actually innocent); *United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998) ("urg[ing] Congress to reconsider its scheme of mandatory consecutive minimum sentences"). As a result of the district court's exercise of discretion and its separate statutory miscalculation, the Beltrans dodged two bullets: the Guidelines' recommended life sentence, and the mandatory minimum sentence required by § 924(c).

[1] The Beltrans' trial counsel had the good sense not to object to the district court's sentence, which — given that it was lower than legally permitted — was certainly better than they could have possibly imagined. Their appellate counsel, however, have exhibited anything but good sense. For reasons beyond our understanding, the Beltrans have *appealed* their sentences, arguing that instead of imposing a mandatory minimum of twenty years, the district court should have consolidated the two § 924(c) sentences into a single five-year term and imposed a fifteen-year minimum sentence for each of them. This argument is squarely foreclosed by decades-old circuit precedents. As we held in *United States v. Smith*, a defendant may be convicted and sentenced for multiple violations of § 924(c) so long as "each 924(c)(1) count [is] supported by a separate predicate offense." 924 F.2d 889, 894 (9th Cir. 1991) (citing *United States v. Fontanilla*, 849 F.2d 1257, 1259 (9th Cir. 1988)). Whether or not one predicate offense is independent from another depends on whether the two offenses would be independent for double jeopardy purposes under the *Blockburger* test. *See United States v. Castaneda*, 9 F.3d 761, 765 (9th Cir. 1993) ("[I]f the elements of the two predicate offenses are different, each may form the basis of a firearm count notwithstanding that both offenses stem from the same set of facts."); *cf. Blockburger v. United States*, 284 U.S. 299 (1932). In this case, the two § 924(c) counts are respectively predicated on possession with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a), (b)(1)(A)(viii), and possession with intent to distribute

cocaine, *id.* §§ 841(a), (b)(1)(A)(iii). As this court has squarely held, "charging a defendant with separate counts [of 'possession with intent to distribute'] for different controlled substances is not multiplicitous and does not violate double jeopardy." *United States v. Vargas-Castillo*, 329 F.3d 715, 720, 722 (9th Cir. 2003). Accordingly, the government was entitled to charge the defendants with two separate § 924(c) counts, and, once they pled guilty to those counts, the district court was required to impose consecutive minimum sentences of five and twenty-five years on top of the ten-year mandatory minimum that attached to the drug charges. Counsel do not urge us to reconsider any of these precedents; rather, they appear simply to be ignorant of the controlling law.

**[2]** In short, if the Beltrans' sentences were to be altered, there appears to be only one direction in which they could go, and that is up — by at least five years. Fortunately for the defendants, in a decision issued one year *after* they filed their notices of appeal, the Supreme Court held in a case with similar facts to this one that an appellate court cannot raise a defendant's sentence if the government has not appealed, even to raise the sentence to the statutorily required minimum. *See Greenlaw v. United States*, 128 S. Ct. 2559, 2562 (2008). Here, the government has for some reason — we would like to think out of a sense of justice or mercy — exercised its discretion not to seek on appeal the additional years of incarceration for which the statute provides. This decision alone has saved one of the Beltrans, Abraham, from a higher sentence, despite his counsel's efforts to the contrary.

**[3]** The other appeal, Jose's, is more brazen, and accordingly holds more potential for self-immolation. Jose does not simply challenge the computation of the mandatory minimum sentence under § 924(c), but also challenges the district court's exercise of its discretion in imposing a thirty-five year sentence instead of the recommended term of life in prison. Jose believes the thirty-five year sentence is unreasonably high as well as procedurally invalid and asks us to vacate it

and remand for resentencing. Although the Supreme Court has observed that, were we to remand the matter, the district court would not be permitted to raise Jose's mandatory minimum sentence *sua sponte* following the government's failure to appeal, *see Greenlaw*, 128 S.Ct. at 2570 n.8, it is hard to imagine that were we to vacate the sentence and instruct the district court to start its reasonableness analysis anew, as Jose asks, it would ignore the fact that its original sentence was statutorily impermissible. In other words, were Jose to prevail on his challenge to the substantive and procedural validity of his sentence, we cannot imagine that he would receive a more favorable sentence, although he might very well receive a higher one. *Compare id.*, *with id.* at 2576 n.2 (Alito, J., dissenting) (discussing *Booker* remands resulting in higher sentences).

**[4]** The odd posture of Jose's appeal brings to mind Oscar Wilde's oft-noted adage: "When the gods wish to punish us, they answer our prayers." Judges, however, are not gods, and, fortunately for Jose, there is no basis in the law to grant his prayer for "relief." The district court's sentence was procedurally sound under § 3553(c), as it adequately explained the rationale for its discretionary decision to depart downward from the recommended life sentence. Nor could the sentence possibly be unreasonably high as a substantive matter, as it was lower than legally permitted. *Cf. United States v. Valente*, 961 F.2d 133, 134 (9th Cir. 1992) ("[D]istrict courts do not have discretion to depart downward from mandatory minimum sentences imposed by statute."). Thus, Jose's appeal fails on both grounds, thereby sparing him from the adverse consequences he likely would have suffered had he succeeded.

\* \* \*

We hope that this case will serve as a strong warning for the defendants' appellate counsel. Only by the unanticipated fortuity of *Greenlaw*, combined in Jose's case with a failure

to present persuasive arguments on the merits, have counsel avoided a disposition that would have *raised* their clients' terms of incarceration by at least five years and, at least in Jose's case, likely far more. Moreover, at the time the Beltrans filed their appeal they *did not know* whether the government would file a cross-appeal, *cf.* Fed. R. App. P. 4(b)(1)(B)(ii); if it had, its success would have been inevitable and the imposition of higher sentences unavoidable.

**[5]** "The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's *skill and knowledge* is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." *Strickland v. Washington*, 466 U.S. 668, 685 (1984) (emphasis added) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275-76 (1942)). We remind counsel that the professional norms that establish the constitutional baseline for their effective performance indisputably include the duty to research the relevant case law and to advise a client properly on the consequences of an appeal. While it is ultimately the client's right to pursue an appeal, we seriously question the quality of counsel's advice when an appeal with essentially zero potential benefit and a significant opportunity for harm is pursued in such a manner as this one has been. We also remind counsel of their ethical obligations not to present arguments to this court that are legally frivolous. Fortunately, in this instance, counsel did no serious harm to their clients, and have escaped this appeal without the imposition of sanctions. However, in the future, we caution counsel to be more diligent, for their own sakes and, more important, for their clients'.

The sentences are **AFFIRMED.**