**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

DONNIE BRYANT, AKA Little Donnie,

*Defendant - Appellant.*

No. 24-3093

D.C. No.
2:06-cr-00234-
RHW-GWF-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted March 31, 2025
Phoenix, Arizona

Filed July 21, 2025

Before: Michael Daly Hawkins, D. Michael Fisher, and
Ryan D. Nelson, Circuit Judges.[*]

Opinion by Judge R. Nelson

---

[*] The Honorable D. Michael Fisher, United States Circuit Judge for the
Court of Appeals, 3rd Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

Affirming the district court's denial of Donnie Bryant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the panel held that neither a defendant's youth at the time of his offense, nor a sentencing disparity resulting from a codefendant's guilty plea, is an "extraordinary and compelling" reason for relief under U.S.S.G. § 1B1.13.

The panel rejected as resting on a false premise Bryant's contention that the sentences for his three firearm convictions under 18 U.S.C. § 924(c) were "stacked" in violation of the First Step Act and that this is an extraordinary and compelling reason for compassionate release. The panel explained that the imposition of three consecutive mandatory ten-year sentences for Bryant's § 924(c) convictions as a first offender is not the kind of "stacking" for "second or subsequent" offenses that Congress outlawed in the First Step Act.

### COUNSEL

James J. Gaeta (argued) and Jim W. Fang, Assistant United States Attorneys; Adam M. Flake, Appellate Chief; Jason M. Frierson, United States Attorney; Office of the United States

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Attorney, United States Department of Justice, Las Vegas, Nevada; Peter H. Walkingshaw, Assistant United States Attorney, Office of the United States Attorney, United States Department of Justice, Reno, Nevada; for Plaintiff-Appellee.

Angela H. Dows (argued), Cory Reade Dows & Shafer, Las Vegas, Nevada, for Defendant-Appellant.

## OPINION

R. NELSON, Circuit Judge:

When he was sixteen, Donnie Bryant participated in a gang-related shooting for which he was sentenced to 70 years' imprisonment. Decades later, he moved for compassionate release, arguing that his youth at the time of his offense is an "extraordinary and compelling" reason for relief. 18 U.S.C. § 3582(c)(1)(A)(i). Because youth does not qualify as "extraordinary and compelling" under § 1B1.13 of the Sentencing Guidelines, we affirm.

I

Before turning to Bryant's case, we start with some background on compassionate release.

A

Our justice system relies on the finality of criminal judgments. *Teague v. Lane*, 489 U.S. 288, 309 (1989). Once imposed, a sentence may be altered "only in very limited circumstances." *Pepper v. United States*, 562 U.S. 476, 501–02 n.14 (2011). With 18 U.S.C. § 3582(c)(1)(A), Congress provided one such "narrow" exception— sometimes called compassionate release—for when

"extraordinary and compelling reasons" warrant reducing a defendant's sentence.  *See Freeman v. United States*, 564 U.S. 522, 526 (2011).

For most of its history, § 3582(c)(1)(A) kicked in only when the Director of the Federal Bureau of Prisons (BOP) filed a compassionate release motion on a defendant's behalf.  *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (per curiam).  Then, in the First Step Act of 2018, Congress amended the statute to allow a defendant to file his own motion, provided he first exhausts administrative remedies within the BOP.  Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239.

Sentence reduction under § 3582(c)(1)(A) is discretionary.  *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022).  The statute allows that discretion to be exercised only when three conditions are met.  *Id.*  First, the district court must find that "extraordinary and compelling reasons" warrant a sentence reduction.  18 U.S.C. § 3582(c)(1)(A).  Second, the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*  Third, the district court must consider the sentencing factors in 18 U.S.C. § 3553(a)—including the nature of the offense and the defendant's characteristics—to determine "whether the requested sentence reduction is warranted under the particular circumstances of the case." *Wright*, 46 F.4th at 945 (citation modified); *see Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).  The district court may deny the defendant's motion if he fails to satisfy any of these conditions.  *Wright*, 46 F.4th at 945.

Congress did not define the first condition, "extraordinary and compelling reasons."  It instead instructed the Sentencing Commission—"in promulgating

general policy statements" for § 3582(c)(1)(A)—to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress put one limit on that delegation: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

The Commission answered Congress's call with § 1B1.13 of the Sentencing Guidelines. That policy statement defines "extraordinary and compelling reasons" to include (among other things) terminal illness, severe physical or mental decline because of the aging process, and the death or incapacitation of the primary caregiver of a defendant's child. U.S.S.G. § 1B1.13(b)(1)–(4). The Commission also included a provision for "Other Reasons." *Id.* § 1B1.13(b)(5). But that category is narrow—it is restricted to reasons "similar in gravity" to the listed examples. *Id.*

In its original form, § 1B1.13 only addressed compassionate release motions by the BOP Director. After the First Step Act, courts questioned whether § 1B1.13 also applied to motions by a defendant, considering the Commission—having lost its quorum—had not updated the policy statement to reflect changes in the law. We, along with most other circuits, held that § 1B1.13 did not apply to defendant-filed motions. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *see United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021). Because § 3582(c)(1)(A) only requires consideration of "applicable" policy statements, and because the then-governing version of § 1B1.13 only referenced motions by the BOP Director, we concluded that the Commission had "not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions

filed by a defendant." *Aruda*, 993 F.3d at 802. Without a binding policy statement for defendant-filed motions, courts could decide for themselves what constituted extraordinary and compelling reasons for compassionate release. Though the definitions in § 1B1.13 could "inform" a court's decision, they were not binding. *Id.*

That changed in 2023. Having regained a quorum, the Commission revised § 1B1.13 to govern motions by a defendant. *See* Notice, Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). Now, courts are "bound by" § 1B1.13 in deciding all compassionate release motions under § 3582(c)(1)(A). [1] *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022); *see Concepcion v. United States*, 597 U.S. 481, 495 (2022) ("[C]ongress expressly cabined district courts' discretion by requiring courts to abide by the Sentencing Commission's policy statements." (citing § 3582(c)(1)(A))). If a defendant cannot show "extraordinary and compelling reasons" as defined in § 1B1.13, then he is ineligible for compassionate release.

B

Donnie Bryant was a member of Squad Up, a Las Vegas-based street gang that dealt crack cocaine in the early 2000s. When he was sixteen, Bryant participated in a plot to kill a rival drug dealer, Jabirey Carter. The gang handled the details in advance. Bryant would shoot at Carter, prompting him to flee down a nearby alley where Jonathon Toliver—

---

[1] *Aruda* has therefore been superseded to the extent that it sets out a different rule for motions filed by defendants after the effective date of the 2023 revisions to § 1B1.13. *See* 993 F.3d at 802. Bryant filed his motion after the 2023 revisions went into effect.

another Squad Up member—would execute Carter in cold blood.

Around 8:00 p.m. on September 13, 2004, Bryant found Carter with a group of friends. Bryant fired three shots, causing Carter and others to escape down the alley toward where Toliver was lying in wait. As the group approached, Toliver started shooting. The bullets missed Carter, but not without a cost. One killed Carter's cousin; another struck a bystander in a nearby apartment. Bryant, Toliver, and another gang member fled the scene. Bryant was arrested the next day.

At trial, a jury convicted Bryant under the Violent Crimes in Aid of Racketeering (VICAR) statute, 18 U.S.C. § 1959, and for using a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c). After amending its judgment several times, the district court imposed its sentence: 40 years on the VICAR count, plus consecutive 10-year terms on each of three § 924(c) convictions. Bryant is set to finish his 70-year term in 2067. Toliver, Bryant's codefendant, pleaded guilty and is serving a 35-year sentence.

C

In 2024, Bryant filed a compassionate release motion under § 3582(c)(1)(A). He made three arguments for why "extraordinary and compelling reasons" support reducing his sentence. First, that he was a minor at the time of his offense. Second, that his sentence was 35 years longer than his codefendant Toliver's, even though Toliver committed his offense as an adult. Third, that the sentences for his § 924(c) convictions were "stacked" in violation of the First Step Act, which postdated Bryant's sentencing.

On the first point, the district court held that "an offender's juvenile status can be an extraordinary and compelling reason warranting a sentence reduction" in an appropriate case. *See United States v. Bryant*, No. 2:06-cr-234, 2024 WL 2028268, at *5 (D. Nev. May 6, 2024). The court noted that § 1B1.13 envisions "other" extraordinary and compelling reasons that are "similar in gravity" to those listed in the statement. *Id.* And it pointed to a separate Guidelines provision, § 1B1.13(e), that says that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing . . . to warrant a [sentence] reduction." *Id.* (quoting U.S.S.G. § 1B1.13(e)). But the district court said little about how youth fits within that scheme.

Instead, the district court applied a "holistic" balancing test that weighs certain factors—immaturity, salvageability, dependence, and susceptibility to peer pressure—in deciding whether to reduce the sentence of a defendant who was a minor at the time of his offense. *Id.* at *4–6 (citing *United States v. Ramsay*, 538 F. Supp. 3d 407, 417–23 (S.D.N.Y. 2021)). Applying those factors, the district court reasoned that Bryant's crime was not the product of youthful immaturity, nor had Bryant shown that he was taking affirmative steps toward rehabilitation. *Id.* at *6–7. The dependence and susceptibility factors were thought to lean slightly in Bryant's favor, but not so much as to outweigh the seriousness of his crime. *Id.* at *7–9. The district court therefore concluded that Bryant's juvenile status at the time of the shooting was not an extraordinary and compelling reason for reducing his sentence. *Id.* at *9. Still, the district court maintained that a defendant's youth could be extraordinary and compelling if the factors pointed in that direction. *Id.* at *5.

As for the sentencing disparity, the district court attributed the discrepancy to Toliver's guilty plea, not to any unfairness. *Id.* at \*3–4. And because, in the district court's view, Bryant "is not serving a 'stacked' sentence," the First Step Act did not support Bryant's request for a sentence reduction. *Id.* at \*3. Bryant timely appealed.

## II

We have jurisdiction under 28 U.S.C. § 1291. A district court's decision on a § 3582(c)(1)(A) compassionate release motion is reviewed for abuse of discretion. *Wright*, 46 F.4th at 944. But when faced with questions of law, like the interpretation of the compassionate release statute or the Sentencing Guidelines, we review de novo. *See United States v. Halamek*, 5 F.4th 1081, 1087 (9th Cir. 2021).

## III

This appeal raises three questions, all with the same answer. Is a defendant's youth at the time of his offense an extraordinary and compelling reason for compassionate release? No. How about a sentencing disparity with a codefendant? Also no. And were Bryant's § 924(c) convictions "stacked" in violation of the First Step Act? No again.

## A

Start with youth. [2] Section 1B1.13 defines "extraordinary and compelling" in several subsections. *See* U.S.S.G. § 1B1.13(b)(1)–(5). Because § 1B1.13 now binds

---

[2] The Government argues that Bryant did not properly raise the youth issue in his compassionate release motion. We disagree. The motion consistently framed Bryant's juvenile status as an independent reason for a reduced sentence.

defendant-filed motions, *see supra*, at 6, we must decide whether any of its subsections can be read to encompass a defendant's youth. If not, then youth cannot satisfy the first condition for compassionate release. *See Wright*, 46 F.4th at 945 (citing § 3582(c)(1)(A)(i)).

The first four subsections are poor fits. Subsection (b)(1) says little about age. It only describes severe medical conditions—like terminal illnesses or situations requiring long-term or specialized care unavailable in prison and without which the defendant is at serious risk of death or bodily harm. U.S.S.G. § 1B1.13(b)(1).

Subsection (b)(2) addresses advanced age, not juvenile status. It applies only when the defendant is at least 65 years old, is experiencing a decline in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his term of imprisonment, whichever is less. *Id.* § 1B1.13(b)(2).

Subsection (b)(3) covers extenuating family circumstances without reference to whether the defendant was a minor when he committed his crime. Examples include, among others, the death or incapacitation of the main caregiver of the defendant's minor child, and the incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent. *Id.* § 1B1.13(b)(3).

And subsection (b)(4) speaks to situations in which a defendant was sexually or physically abused by a BOP employee after he began serving his term of imprisonment. *Id.* § 1B1.13(b)(4).

So the only way youth can qualify as extraordinary and compelling is through subsection (b)(5): the "Other

Reasons" provision. Subsection (b)(5) is narrow. It only covers a "circumstance or combination of circumstances" that is "similar in gravity" to those described above. *Id.* § 1B1.13(b)(5). The question, then, is whether a defendant's youth at the time of his offense is "similar in gravity" to the other circumstances in § 1B1.13. *Id.*

We think not. The circumstances in § 1B1.13 address situations where continued incarceration risks a defendant's health or safety, § 1B1.13(b)(1)–(2), (4), or would severely burden third parties unable to care for themselves, § 1B1.13(b)(3). That a defendant was a minor when he committed his crime—which, in many cases, occurred years or even decades ago—does not raise similar concerns.

What's more, subsections (b)(1) through (4) share an important characteristic—they generally refer to circumstances that develop *after* sentencing. It makes sense why: § 3582(c)(1)(A) provides "a mechanism for relief" when the district court failed to "anticipat[e] developments that take place after the first sentencing." *Setser v. United States*, 566 U.S. 231, 242–43 (2012); *see United States v. Jenkins*, 50 F.4th 1185, 1203 (D.C. Cir. 2022) (the statute covers "*post*-sentencing changes to a [defendant's] individual situation"). A defendant's age at the time of his offense, by contrast, is an immutable fact—one that was known to the sentencing judge, and which could be considered from the start in imposing a sentence. *See* 18 U.S.C. § 3553(a). Youth is therefore not "similar in gravity" to the circumstances in § 1B1.13, which arise after a defendant has been sentenced.

As other courts have explained, the statutory scheme envisions extraordinary and compelling reasons as post-sentencing changes to a defendant's personal circumstances.

*See Jenkins*, 50 F.4th at 1203; *United States v. Hunter*, 12 F.4th 555, 569–72 (6th Cir. 2021). Even if a district court identifies an extraordinary and compelling reason, it may not grant relief unless the § 3553(a) factors support the reduction. *Wright*, 46 F.4th at 945. Under § 3553(a), courts may consider facts that existed at sentencing, like the "nature and circumstances of the offense" and the "history and characteristics of the defendant." 18 U.S.C. § 3553(a); *see Hunter*, 12 F.4th at 569. That tells us something about the separate, extraordinary-and-compelling-reasons requirement. To fit with the rest of the statute, the requirement must address considerations not already subsumed in the § 3553(a) analysis. Otherwise, the requirement would be redundant. And Congress seldom drafts statutes that way. *See Torres v. Lynch*, 578 U.S. 452, 463 n.8 (2016) ("[O]ur ordinary assumption [is] that Congress, when drafting a statute, gives each provision independent meaning."). Thus, consistent with the binding definition in § 1B1.13, "extraordinary and compelling" generally refers to "post-sentencing factual developments," *Hunter*, 12 F.4th at 569, which do not include a defendant's age at the time of his offense.

That does not mean, however, that youth can never be considered in ruling on a motion for compassionate release. As the preceding discussion shows, the fact that a defendant was a minor at the time of his offense can be considered when weighing the § 3553(a) factors at the third step of the compassionate release analysis. *See* 18 U.S.C. § 3553(a) (considerations include the "history and characteristics of the defendant"). The third step is where district courts consider facts that existed at sentencing. But youth is not an extraordinary and compelling reason at step one, which focuses instead on developments that occur after a defendant

has been sentenced. So long as a defendant identifies an extraordinary and compelling reason that fits within § 1B1.13's binding framework, a district court could decide under § 3553(a) that a defendant's youth is another factor supporting compassionate release. The statute allows for that possibility.

What the statute does not allow is contorting the extraordinary-and-compelling-reasons requirement to convert compassionate release into an "unbounded resentencing" mechanism. *Hunter*, 12 F.4th at 570. In enacting § 3582(c)(1)(A), Congress did not authorize district courts to take a second bite at the sentencing apple. Rather, compassionate release is a limited, discretionary exception to the default rule that a federal defendant will serve his entire sentence. *See Dillon v. United States*, 560 U.S. 817, 819 (2010).

Yet interpreting "extraordinary and compelling" to include a defendant's youth would turn compassionate release into a loophole for reevaluating sentencing decisions without congressional authorization. The time to focus on a defendant's youth is at sentencing, when the district court must craft a punishment "sufficient, but not greater than necessary" to satisfy the goals of sentencing. 18 U.S.C. § 3553(a); *see* U.S.S.G. § 5H1.1 ("A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses."). Here, for example, the district court weighed Bryant's juvenile status in arriving at its original sentence. And it was right to do so: in sentencing, "youth matters." *Jones v. Mississippi*, 593 U.S. 98, 109 (2021).

But compassionate release is not sentencing or resentencing. The focus of compassionate release

proceedings is not on what sentence is most appropriate given the defendant's background and crime; it is on whether new circumstances warrant discretionary relief. *See supra*, at 11–12; *see also Dillon*, 560 U.S. at 830 (there are "fundamental differences between sentencing and sentence-modification proceedings"). Using the compassionate release statute to second-guess a sentencing determination years later endorses "an endless repetition of inquiry" into sentences that have already been through the wringer of judicial review. *See McCleskey v. Zant*, 499 U.S. 467, 492 (1991) (quotation omitted). The text and structure of § 3582(c)(1)(A) and its accompanying policy statement do not permit that interpretation of the extraordinary-and-compelling-reasons requirement.

Thus, the district court erred in concluding that a defendant's youth can meet the definition of extraordinary and compelling in an appropriate case. *See Bryant*, 2024 WL 2028268, at *5. The "holistic" balancing test on which it relied lacks any basis in the text of the statute or the policy statement. *Id.* at *5–6 (citing *Ramsay*, 538 F. Supp. 3d at 417–23). And the district court did not elaborate on how youth is "similar in gravity" to terminal illnesses, deterioration from the aging process, extenuating family circumstances, or abuse suffered at the hands of a BOP official.

Instead, the district court invoked § 1B1.13(e), which provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing" to warrant a reduction in a defendant's sentence. As the argument goes, because a defendant's youth is known to the sentencing judge, and because § 1B1.13(e) does not preclude consideration of facts that may have been known at

sentencing, youth is a permissible consideration in granting compassionate release.

Section 1B1.13(e) does not stretch that far. The provision cannot encompass a defendant's youth because it does not define "extraordinary and compelling reasons" for compassionate release—it takes that term as it comes. *See* U.S.S.G. § 1B1.13(e) ("For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen . . . ."). The definition comes from a different provision: § 1B1.13(b) and its various subsections. *See* U.S.S.G. § 1B1.13(b) ("Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof . . . ."). Putting the two provisions together, an extraordinary and compelling reason could be foreseen at sentencing, but it still must fit one of the circumstances in subsections (b)(1) through (4) or be "similar in gravity" to those circumstances under subsection (b)(5). And again, a defendant's youth at the time of his offense does not align with any of those categories. *See supra*, at 11.

Section 1B1.13(e) still does some work. It prevents a district court from rejecting circumstances that satisfy subsections (b)(1) through (5) simply because they "reasonably could have been known or anticipated" at sentencing. *See* U.S.S.G. § 1B1.13(e). Some examples help illustrate the point. A district court could be aware of a defendant's medical impairments at sentencing. The court could even expect that those impairments will get worse. If the defendant's condition later deteriorates so much that he begins experiencing extraordinary and compelling medical circumstances under subsection (b)(1), then § 1B1.13(e) keeps the door open for compassionate release, even though

the sentencing court could have known or anticipated the defendant's worsening condition from the get-go.

Here's another. At sentencing, a district court could know that the main caretaker of the defendant's child—say, a grandparent—is suffering from an illness that makes it difficult to care for the child without the defendant's help. The court could still choose to sentence the defendant to a lengthy prison term. If the caretaker's condition becomes so debilitating that she can no longer care for the defendant's child, then § 1B1.13(e) allows a court to reduce the defendant's sentence based on extenuating family circumstances under subsection (b)(3), despite its awareness at sentencing that the caretaker's health could deteriorate.

These examples show that § 1B1.13(e) is not a freestanding category for circumstances not otherwise akin to those in subsections (b)(1) through (5). Rather, § 1B1.13(e) is a safeguard to prevent district courts from quickly discounting relief just because there was some inkling at sentencing that an extraordinary and compelling reason could develop down the line. Those reasons must still track the examples in subsections (b)(1) through (4) or be "similar in gravity" to them. A defendant's youth does not fit any of those categories, and so it cannot be an extraordinary and compelling reason for compassionate release.

In short, the district court erred in concluding that youth can be extraordinary and compelling for purposes of § 3582(c)(1)(A). But because we can affirm "on any ground supported by the record," we affirm the district court's denial of Bryant's compassionate release motion as it relates to his youth at the time of his offense. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003).

B

Next is Bryant's argument based on the 35-year disparity between his sentence and that of his codefendant, Toliver. Like Bryant, Toliver was sentenced on several VICAR and § 924(c) counts. Years later, Toliver was resentenced to 35 years' imprisonment based on an agreement in which he pleaded guilty to a different firearm count. So while Toliver and Bryant were convicted for offenses arising out of the same incident, Toliver's final judgment and corresponding sentence are different.

In Bryant's view, the disparity between the two sentences is an extraordinary and compelling reason for compassionate release. That is wrong for many of the same reasons as before. For one, a sentencing disparity with a codefendant is not "similar in gravity" to the circumstances in subsections (b)(1) through (4), which focus on a defendant's health and safety or that of an interested third party. *See* U.S.S.G. § 1B1.13(b)(1)–(5). And again, compassionate release addresses post-sentencing changes to the *defendant's* circumstances or those of an immediate family member. *See supra*, at 11–12. That prosecutors showed Toliver leniency says nothing about how Bryant's situation has changed since his sentencing. *See Hunter*, 12 F.4th at 571–72. Lastly, as Bryant acknowledges, Toliver's sentence derives from a bargained-for plea. Because "a codefendant's acceptance of a guilty plea is a permissible explanation for a sentencing disparity," there is nothing extraordinary and compelling about the length of Bryant's sentence relative to Toliver's. *United States v. Valdez-Lopez*, 4 F.4th 886, 893 (9th Cir. 2021); *see Hunter*, 12 F.4th at 572 ("There is nothing 'extraordinary' or 'compelling' about a sentence disparity that results from a co-defendant's decision to plead guilty and assist the government."). The

compassionate release statute is not a tool for eliminating sentencing disparities based on legitimate guilty pleas.

Bryant counters that a reduction finds support in *United States v. Roper*, 72 F.4th 1097 (9th Cir. 2023), and *Chen*, 48 F.4th at 1093. Those cases deal with other issues—whether and when district courts can consider sentencing disparities created by non-retroactive changes in the law in deciding whether a defendant has shown extraordinary and compelling reasons for compassionate release. *Roper*, 72 F.4th at 1099; *Chen*, 48 F.4th at 1098; *see also United States v. Rutherford*, 120 F.4th 360, 366–67 (3d Cir. 2024) (citing U.S.S.G. § 1B1.13(b)(6)), *cert. granted*, 2025 WL 1603603 (U.S. June 6, 2025) (No. 24-820). Toliver's sentence is not 35 years shorter than Bryant's because he benefited from changes in the law; his sentence was reduced in exchange for pleading guilty. Toliver's cooperation is not an extraordinary and compelling reason for Bryant's release.

## C

Finally, we turn to Bryant's contention that his sentence was impermissibly "stacked" as to his § 924(c) convictions, and that this is an extraordinary and compelling reason for compassionate release. Bryant's argument rests on a false premise: he is not serving a "stacked" sentence.

In *Deal v. United States*, the Supreme Court held that defendants without a prior § 924(c) conviction could be charged for both a first offense (carrying a five-year mandatory minimum sentence) and a "second or subsequent" offense (carrying a 25-year sentence, to be served consecutively) in the same indictment. 508 U.S. 129,

130–36 (1993) (quoting § 924(c)(1) (1988)).[3]  Thus, under *Deal*, a defendant convicted of multiple § 924(c) offenses in the same case would quickly face mandatory enhanced sentences for "second or subsequent conviction[s]," despite having not been previously convicted of a § 924(c) offense. *See id.*  This became "colloquially known as the practice of § 924(c) stacking."  *Chen*, 48 F.4th at 1094 (citation modified).

Congress outlawed § 924(c) stacking in the First Step Act.  *See* Pub. L. No. 115-391, § 403(a), 132 Stat. at 5221–22 (codified at § 924(c)(1)(C)).  Negating *Deal*, the Act revised the statute to make clear that the 25-year enhanced sentence may be imposed only when a § 924(c) violation occurs "after a prior [§ 924(c)] conviction . . . has become final." *United States v. Davis*, 588 U.S. 445, 450 n.1 (2019) (quoting § 924(c)(1)(C)).  That means a first-time § 924(c) offender cannot receive the 25-year enhanced sentence, no matter how many § 924(c) convictions he accumulates in the same case.

Bryant, a first-time § 924(c) offender, did not receive a stacked sentence for his three § 924(c) convictions.  Because he discharged a firearm, each of those convictions came with a ten-year mandatory minimum sentence, 18 U.S.C. § 924(c)(1)(A)(iii), which, by law, must run consecutively, *id.* § 924(c)(1)(D)(ii).   The district court treated each violation as a first offense, thus imposing a 30-year sentence with ten years on each count.  Bryant never received the 25-year enhanced sentence for a "second or subsequent"

---

[3] When the Supreme Court decided *Deal*, the penalty for a "second or subsequent" offense was 20 years' imprisonment.  508 U.S. at 130 (quoting § 924(c)(1) (1988)).  The penalty was increased to 25 years in 1998. *See* Pub. L. No. 105-386, 112 Stat. 3469, 3469.

conviction.  So Bryant's sentence does not implicate the First Step Act's revisions to § 924(c).

Bryant's argument rests on a new theory of stacking.  He is actually challenging § 924(c)'s consecutive-sentence mandate for multiple convictions.  *See* 18 U.S.C. § 924(c)(1)(D)(ii).  Such sentences are "stacked" in that they occur one after the other.  But that is not the kind of stacking that Congress addressed in the First Step Act: Congress was concerned with the 25-year enhancement for "second or subsequent" offenses.  That is why Congress amended § 924(c) to bar imposing the 25-year enhancement without a prior "final" § 924(c) conviction, while leaving the consecutive-sentence mandate untouched. [4]  Indeed, if Bryant were sentenced again today, the district court would have to impose (at a minimum) the same sentence for his § 924(c) convictions: three ten-year terms, all consecutive to each other.  *See United States v. Beltran-Moreno*, 556 F.3d 913, 915 (9th Cir. 2009).  Nothing about that is extraordinary and compelling.

## IV

A defendant's youth at the time of his offense is not "extraordinary and compelling" under § 1B1.13.  *See* 18 U.S.C. § 3582(c)(1)(A)(i).  Nor is a sentencing disparity that stems from a codefendant's guilty plea.  And we do not credit Bryant's novel conception of § 924(c) stacking.

**AFFIRMED.**

---

[4] Bryant suggests that the First Step Act eliminated stacking "regardless of whether the sentence was enhanced by 10 or 25 years."  But Bryant's ten-year sentences are not "enhanced"—they are the mandatory minimum sentence for his offense.  *See* 18 U.S.C. § 924(c)(1)(A)(iii).